JOHN W. HUBER, United States Attorney (No. 7726)
STEWART M. YOUNG, Assistant United States Attorney (No. 14377)
STEWART C. WALZ, Assistant United States Attorney (No. 3374)
MARK Y. HIRATA, Assistant United States Attorney (No. 5087)
CY H. CASTLE, Assistant United States Attorney (No. 4808)
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682

FILED
U.S. DISTRICT COURT
2017 APR -5  P 4: 57
DISTRICT OF UTAH
BY:_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| UNITED STATES OF AMERICA, | : | Case No. |
|---|---|---|
| Plaintiff, | : | |
| | : | INDICTMENT |
| v. | : | |
| | : | Vio. |
| TERRY CHARLES DIEHL, | : | |
| | : | 18 U.S.C. § 152(3) (False Declaration) |
| Defendant. | : | Counts 1-5 |
| | : | |
| | : | 18 U.S.C. § 152(1) (Concealment of Assets) |
| | : | Counts 6-12 |

Case: 2:17-cr-00208
Assigned To : Nuffer, David
Assign. Date : 04/05/2017
Description: USA v.

The Grand Jury charges:

At all times relevant to this Indictment:

1.      Defendant TERRY CHARLES DIEHL ("defendant DIEHL") was a resident of Salt Lake County, Utah, and resided at a house on Prospector Drive in Salt

1

Lake City, Utah 84121 ("Prospector Drive address"). Defendant DIEHL was primarily engaged in the business of real estate development and consulting. Defendant DIEHL also was a member of the Utah Transit Authority's ("UTA") Board of Trustees from 2001 to 2011.

2. Defendant DIEHL had two daughters, M.D.H. and B.J.D. M.D.H. resided in Salt Lake City, Utah 84121. B.J.D. resided at various addresses in Dallas, Texas.

**SVA's Formation and Management**

3. On or about November 22, 2011, defendant DIEHL caused Skyline Venture Associates, Inc. ("SVA") to be created as a corporation registered with the Utah Division of Corporations and Commercial Code, and owned by his daughters, M.D.H. and B.J.D. Although having no ownership interest in SVA on paper, during the period from around December 2011 up to and past May 2013, defendant DIEHL managed and controlled all of SVA's day-to-day business affairs and financial activities.

**SVA's Bank Account**

4. On or about December 21, 2011, defendant DIEHL directed the opening of a business account (account number ending in 5224) under SVA at JPMorgan Chase Bank (the "SVA account"), listing his Prospector Drive address as SVA's business address. The three authorized signers on the SVA account were M.D.H., B.J.D., and K.M. K.M. was defendant DIEHL's office manager and bookkeeper. During the period from December 2011 to May 2013, neither M.D.H. or B.J.D. had any involvement

with managing or handling the SVA account. During that same period, and acting at defendant DIEHL's instruction and direction, K.M. conducted numerous transactions involving funds transferred in and out of the SVA account, including deposits, checks, wire transfers, and account-to-account transfers.

**Chapter 11 Bankruptcy – Background**

5. A voluntary bankruptcy case is begun by the filing of a bankruptcy petition, and the person who files that petition is a "debtor" under federal bankruptcy law. A debtor may file, among other petitions, a chapter 11 bankruptcy petition. The process is conducted in federal court and is governed by the United States Bankruptcy Code, which is found in Title 11 of the United States Code.

6. Upon the filing of a bankruptcy petition, a debtor is required by law to fully disclose his or her financial circumstances, including, among other things, assets, liabilities, income from prior years, current income, and any anticipated increase in income. Assets include real, personal, tangible, and intangible property, whether the asset is held in the debtor's name or held in the name of another person or entity on behalf of the debtor. A bankruptcy "estate" is created upon the filing of a bankruptcy petition, which is a collective reference to all legal or equitable interests of the debtor in property at the time of the bankruptcy filing, including all property in which the debtor has an interest, even if it is owned or held by another person. The estate also includes all property the debtor acquires after commencement of the case, including earnings from

services performed.

7. In an individual Chapter 11 bankruptcy, the debtor keeps possession and control of the assets (referred to as the "debtor in possession") in the estate, while attempting to reduce debt and reorganize his financial affairs under the watchful eyes of the United States Trustee (a civil component of the U.S. Department of Justice), creditors, appointed unsecured creditors' committee, and the bankruptcy court. The bankruptcy system is based on the fundamental premise and requirement that a debtor will make full disclosure of all assets and liabilities. In short, the price of bankruptcy is full disclosure. Accordingly, a debtor in possession assumes the position of a fiduciary (i.e., a person who has the power and obligation to act for another under circumstances which require total trust, good faith, and honesty) of the debtor's bankruptcy estate. The debtor is required to file with the bankruptcy court, under penalty of perjury, documents requiring full, accurate, and complete disclosure of his past and current financial status, including, among other filings, a: (1) Summary of Schedules (e.g., Assets and Liabilities; Current Income and Expenditures); and (2) Statement of Financial Affairs.

8. Additionally, the debtor in possession must file a disclosure statement and plan of reorganization. The purpose of the disclosure statement is to describe a debtor's assets, liabilities, repayment to creditors, and business affairs sufficient to enable a creditor to make an informed judgment about a debtor's plan of reorganization. The disclosure statement must be approved by the bankruptcy court. The plan and approved

disclosure statement are provided to creditors for voting and, thereafter, the plan is submitted to the bankruptcy court for confirmation.   To confirm a plan of reorganization, the bankruptcy court must find, among other things, that the plan has been proposed in good faith and not by any means forbidden by law.

9.   During the period from the filing of the Chapter 11 petition to the bankruptcy court's approval of the plan of reorganization, the debtor is required to file with the bankruptcy court, under penalty of perjury, "Monthly Operating Reports" summarizing, among other financial information, cash receipts and cash balances of any operating accounts.   "Cash receipts" include cash from operations, sale of assets, loans/advances, and "other" cash sources.

**Defendant DIEHL's Chapter 11 Bankruptcy**

10.   On or about March 30, 2012, defendant DIEHL filed a voluntary petition for relief under Chapter 11 of the U.S. Bankruptcy Code, Bankruptcy Petition No. 12-24048, in the United States Bankruptcy Court for the District of Utah.

11.   On or about April 13, 2012, defendant DIEHL filed a Statement of Financial Affairs, under penalty of perjury, and made the following misrepresentations, among others:

- **Questions 1 and 2 – Income from employment or operation of business** – These questions required defendant DIEHL to state, among other things, "the gross amount of income [he had] received from . . . operation of [his business] . . . during the **two years** immediately preceding this calendar year" and any other sources of income for that period. (bolding original).   For the year 2011, defendant DIEHL falsely represented his gross business income as only

5

- **$376,708.83 and no income from any other sources.** In truth and fact, defendant DIEHL received **over $1,000,000** in gross income from the operation of his business involving real property stemming from a UTA Front Runner transit oriented development in Draper, Utah.

- **Question 18 – Nature, location and name of business** – This question required defendant DIEHL to identify "all businesses in which [he] was an officer, director, *or managing executive of a corporation*, . . . within **six years** immediately preceding the commencement of this case, . . .." (bolding original and emphasis added). Under this section, defendant DIEHL concealed and falsely omitted SVA, a corporation for which he managed and controlled exclusively its day-to-day business affairs and activities.

12.   Following the creation of SVA, defendant DIEHL directed and facilitated the transfer of funds under his control into the SVA account, including among other funds: (1) payments for consulting services; (2) third-party loans extended to defendant DIEHL; and (3) payments on third-party loans extended by defendant DIEHL.

13.   During the period from April 2012 to May 2013 (the "plan confirmation period"), defendant DIEHL filed 13 Monthly Operating Reports ("MOR"), each under penalty of perjury, and made the following misrepresentations, among others, in 11 out of 13 reports:

**Cash Flow Summary**

- **Cash Receipts** – Under this section of the MOR, defendant DIEHL was required to disclose all "Cash Receipts," as explained in paragraph 9 above. Such cash receipts included, among other things: (1) payments to defendant DIEHL for consulting services stemming from his real estate development business; (2) loans extended to defendant DIEHL; and (3) payments on loans extended by defendant DIEHL. In truth and fact, however, defendant DIEHL significantly underreported on his MORs substantial funds he directed, received, and controlled through the SVA account during the plan

confirmation period.   In total, defendant DIEHL concealed and falsely underreported on his MORs approximately **$800,000** during the plan confirmation period.

- **Cash Balance Summary** – Under this section of the MOR, defendant DIEHL was required to disclose all operating accounts and ending monthly balances, in addition to the debtor in possession operating account he held at JPMorgan Chase Bank (account number ending in 1814).   In each MOR, defendant DIEHL concealed and falsely omitted the SVA account and its ending balance, a bank account he used and controlled as an operating account throughout the plan confirmation period.

**Cash Receipts Detail**

- Under this section of the MOR, defendant DIEHL partially disclosed SVA as a "Payer" of consulting income to himself, the debtor in possession, and listed specific SVA payments received during each month of the plan confirmation period.   This representation was false and misleading in that it did not disclose that defendant DIEHL controlled and directed each of these payments to himself out of the SVA account and concealed additional funds directed by him into the SVA account.

14.   On or about May 20, 2013, the bankruptcy court confirmed defendant DIEHL's Chapter 11 Plan of Reorganization.

## Counts 1 through 5
## 18 U.S.C. § 152(3)
## (False Declaration)

15.   By this reference, the Grand Jury incorporates the allegations in paragraphs 1 through 14 above as if fully alleged herein.

16.   On or about each of the dates alleged below, during a pending bankruptcy case in the United States Bankruptcy Court for the District of Utah, *In re Terry Charles Diehl*, Bankruptcy Petition No. 12-24048, in the Central Division of the District of Utah,

7

**TERRY CHARLES DIEHL,**

defendant herein, knowingly and fraudulently made a material false declaration, certificate, and verification, each under penalty of perjury, for each of the following bankruptcy filings, among others:

| Count | Date of Filing | Title of Filing (Document Filing Number) / Material False Statements and Omissions (amounts approximate) |
|---|---|---|
| 1 | 04/13/2012 | Statement of Financial Affairs (doc. 14)<br>• False Statement: Questions 1 and 2: **$376,708.83** in gross income during 2011 (actual gross income: **over $1,000,000**).<br>• Omission: Question 18: SVA not listed. |
| 2 | 06/14/2012 | Monthly Operating Report for period 5/1/2012 to 5/31/2012 (doc. 23)<br>• False Statement: Total Cash Receipts: **$27,529.84** (actual cash receipts: **$80,000**)<br>• False and Misleading Statement: Cash Receipts Detail: Consulting fees from SVA totaling $27,000<br>• Omission: SVA account balance not stated. |
| 3 | 08/14/2012 | Monthly Operating Report for period 7/1/2012 to 7/31/2012 (doc. 56)<br>• False Statement: Total Cash Receipts: **$29,433.97** (actual cash receipts: **$277,304.79**)<br>• False and Misleading Statement: Cash Receipts Detail: Consulting fees from SVA totaling $25,000<br>• Omission: SVA account balance not stated. |
| 4 | 01/14/2013 | Monthly Operating Report for period 12/1/2012 to 12/31/2012 (doc. 124)<br>• False Statement: Total Cash Receipts: **$27,442.76** (actual cash receipts: **$130,000**)<br>• False and Misleading Statement: Cash Receipts Detail: Consulting fees from SVA totaling $27,000<br>• Omission: SVA account balance not stated. |
| 5 | 04/15/2013 | Monthly Operating Report for period 3/1/2013 to 3/31/2013 (doc. 180)<br>• False Statement: Total Cash Receipts: **$25,634.34** (actual |

|   |   | cash receipts: **$120,000**)<br>• False and Misleading Statement: Cash Receipts Detail: Consulting fees from SVA totaling $27,000<br>• Omission: SVA account balance not stated. |
|---|---|---|

Each count in violation of 18 U.S.C. §§ 152(3) and 2(b).

**Counts 6 through 12**
**18 U.S.C. § 152(1)**
**(Concealment of Assets)**

17. By this reference, the Grand Jury incorporates the allegations in paragraphs 1 through 14 above as if fully alleged herein.

18. On or about each of the dates alleged below, during a pending bankruptcy case in the United States Bankruptcy Court for the District of Utah, *In re Terry Charles Diehl*, Bankruptcy Petition No. 12-24048, in the Central Division of the District of Utah,

**TERRY CHARLES DIEHL,**

defendant herein, knowingly and fraudulently concealed, and caused to be concealed, an asset belonging to the debtor's bankruptcy estate (i.e., funds controlled by defendant DIEHL in the SVA account) from the United States Trustee and creditors, through the following acts, among others, as described below:

| Count | Date | Acts of Concealment |
|---|---|---|
| 6 | 05/23/2012 | Defendant DIEHL caused Boulder Ventures Development, Inc. to issue an **$80,000** check to SVA, which was deposited into the SVA account on 5/29/2012. |
| 7 | 06/29/2012 | Defendant DIEHL caused Urban Chase to issue a **$277,304.79** check to Wasatch Pacific, Inc., which was deposited and transferred to the SVA account on 7/9/2012. |
| 8 | 12/05/2012 | Defendant DIEHL caused D.B. to issue a **$30,000** check to SVA, which was deposited into the SVA account on 12/5/2012. |

| 9  | 12/06/2012 | Defendant DIEHL caused Boulder Ventures Development, Inc. to issue a **$30,000** check to SVA, which was deposited into the SVA account on 12/7/2012. |
| 10 | 12/23/2012 | Defendant DIEHL caused K.G. to issue a **$50,000** check to SVA, which was deposited into the SVA account on 12/24/2012. |
| 11 | 02/28/2013 | Defendant DIEHL caused K.G. to issue a **$50,000** check to SVA, which was deposited into the SVA account on 3/1/2013. |
| 12 | 02/28/2013 | Defendant DIEHL caused The Thackeray Company, L.C. to issue a **$50,000** check to SVA, which was deposited into the SVA account on 3/1/2013. |

Each in violation of 18 U.S.C. §§ 152(1) and 2(b).

## FORFEITURE ALLEGATIONS
## 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461
### (Criminal Forfeiture)

19.  Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of any offense in violation of 18 U.S.C. § 152, as set forth in this Indictment, the defendant shall forfeit to the United States of America all property, real or personal, that constitutes or is derived from proceeds traceable to any violation.  The property to be forfeited includes, but is not limited to, the following:

A money judgment equal to the value of all property, real or personal, which constitutes or is derived from proceeds traceable to any violation of 18 U.S.C. § 152.

20.  <u>Substitute Assets:</u> If the property described above as being subject to forfeiture, as a result of any act or omission of defendant DIEHL:

   a. Cannot be located upon the exercise of due diligence;

   b. Has been transferred or sold to, or deposited with, a third party;

   c. Has been placed beyond the jurisdiction of the Court;

   d. Has been substantially diminished in value; or

   e. Has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b) and/or 28 U.S.C. § 2461, to seek to forfeit any other property of defendant DIEHL up to the value of the forfeitable property described above.

A TRUE BILL:

/s/
FOREPERSON OF THE GRAND JURY

APPROVED:

JOHN W. HUBER
United States Attorney

STEWART M. YOUNG
STEWART C. WALZ
MARK Y. HIRATA
CY H. CASTLE
Assistant United States Attorneys