IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

```
In re:                      )
                            )
UNITED STATES OF AMERICA,   )
                            )
          Plaintiff,        )
                            )
v.                          )Case No. 2:17-CR-208CW
                            )
TERRY CHARLES DIEHL,        )
                            )
          Defendant.        )
```

Transcript of Status Hearing

BEFORE THE HONORABLE CLARK WADDOUPS

December 12, 2017

Karen Murakami, CSR, RPR
8.430 U.S. Courthouse
351 South West Temple
Salt Lake City, Utah 84101
Telephone: 801-328-4800

<u>APPEARANCES OF COUNSEL</u>:

For the Plaintiff:     JARED C. BENNETT
                       Assistant U.S. Attorney
                       Suite 1800
                       111 South Main Street
                       Salt Lake City, Utah 84111


For the Defendant:     SMITH CORRELL LLP
                       By D. Loren Washburn
                          Attorney at Law
                       Suite 320
                       8 East Broadway
                       Salt Lake City, Utah 84111

1        **Salt Lake City, Utah, Tuesday, December 12, 2017**
2                              * * *
3              THE COURT:  We are here in the matter of the
4     United States v. Terry Charles Diehl, case 2:17-cr-208.
5     Will counsel please state their appearance.
6              MR. WASHBURN:  Loren Washburn representing
7     Mr. Diehl.
8              MR. BENNETT:  Jared Bennett on behalf of the
9     United States.
10             THE COURT:  The purpose of this hearing is
11    basically to discuss how we proceed on Mr. Diehl's
12    motion in terms of talking about a schedule and the
13    issues that we ought to anticipate in terms of how we
14    address that.
15             Mr. Washburn, we have your motion, are there
16    any other materials you expect to file before we hear
17    from the United States?
18             MR. WASHBURN:  Your Honor, Mr. Bennett and I
19    discussed that the other day.  I think there are two
20    additional pieces of information that -- we'll defer to
21    the court, but that we talked about possibly filing.
22    One of those is an affidavit from Mr. Diehl regarding
23    his net worth.  We have an assertion in there that he
24    had a net worth under $2 million.  Given the recent
25    bankruptcy we thought that was pretty solid evidence,

1   but after looking at cases and discussing it with
2   Mr. Bennett, I think it would be best for us to put an
3   affidavit to that effect in.  But that's something we'll
4   submit as a supplement.
5              The other thing, and I think here I'd take
6   the court's direction on this one, as the court may have
7   seen, I think it's Exhibit T to our motion, was an
8   affidavit from Mr. Peters where he had collected all the
9   invoices from all the attorneys and had spelled out a
10  gross number of hours.  That gross number of hours
11  included both pre and post-Indictment, and it didn't
12  include billing entries or any other level of
13  specificity.  I think in that declaration we suggested
14  that we would take the court's lead.  If the court wants
15  a more detailed listing at this point, we're happy to do
16  that.  If on the other hand the court wanted to
17  bifurcate it and determine whether we were entitled to
18  fees before we started looking at the reasonableness of
19  the fees, we're happy to do that as well.  Mr. Bennett I
20  think had suggested that he thought the proper way to
21  proceed, and I suppose I'm speaking for him, but was for
22  us to get that more detailed proffer.  At this point
23  we're happy to do that.  It will take some looking and
24  redacting at whether some of these entries may involve
25  privilege.  And I think together with that -- with that

1  specific listing of billing records we'll probably
2  provide an affidavit from Neil Kaplan.  As we mention in
3  Exhibit T we retained Mr. Kaplan as an expert to advise
4  the court on -- on advising the court on the necessity
5  of the various time entries that we've entered.  So he's
6  been undertaking a review of those billing records as
7  well, and he would provide an explanation to the court,
8  or provide testimony, whichever the court believes would
9  be more helpful, on the necessity and the reasonableness
10 of the hourly expenditures that we've made.
11              THE COURT:  Mr. Bennett, what's your view?
12              MR. BENNETT:  My view is based on EAJA, to
13 incorporate EAJA procedures into this litigation.  And
14 what EAJA requires is seven things, and one of those is
15 detailed billing statements from counsel, because in our
16 response we're supposed to be able to either take issue
17 with or go along with whatever those are.  And so I
18 think EAJA is a matter of what's required in the initial
19 filing, actually requires those detailed billing
20 statements.  And so that's why I think the proper way
21 would be for Mr. Diehl's team to supplement that with
22 those detailed billing statements so we could have one
23 self-contained response that hopefully addresses all of
24 the issues.
25              As to the expert to kind of opine as to


1    whether those are necessary, I've never seen an EAJA
2    case in all the ones that I've litigated and all the
3    ones that I've looked at that's ever considered that
4    because that would be yet another expense that would be
5    added onto potentially.  We need to decide this
6    according to EAJA on the record as much as possible.  So
7    I understand the defense's -- or defendant's,
8    Mr. Diehl's position in this case would be there may be
9    a need for an expert, there may be a need for discovery.
10   That may be true, but to the extent possible, it should
11   be resolved on the record, which is I think hopefully
12   going to be before the court in short order.
13              THE COURT:  It does seem to me that there is
14   some merit worth discussing as to whether or not we
15   reach the issue as to the amount of attorneys hours and
16   the reasonableness of whether it was necessary until we
17   decide whether the initial hurdles have been crossed.
18   But if the United States believes that they are required
19   to file all of that before the United States responds, I
20   don't have any objection to that.
21              MR. WASHBURN:  Neither do we, Your Honor.
22   We can talk about where in the schedule that may set.  I
23   think Mr. Bennett and I have talked about a schedule
24   that made sense for us.  Of course whether that makes
25   sense to the court is a different question.

1  THE COURT: Well, I'll hear you out on that.
2  But there's one other issue that having read the motion
3  and considered the issues that are going to be placed in
4  front of the court, one of the issues will be the need
5  for the court to review the grand jury proceedings in
6  terms of what presentations were made to the grand jury.
7  I don't have a motion from Mr. Diehl yet to release the
8  grand jury proceedings. I don't think they need to be
9  released publically at this point. I think they can be
10 released for the court's in camera review. Where are
11 you on that, Mr. Washburn?
12 MR. WASHBURN: I suppose there are a couple
13 of different places that could come into play, Your
14 Honor, and so let me take up I think two different
15 versions of the grand jury. One, and I think this is
16 what you're referring to right now, is a request that
17 the court review -- and we made this general request in
18 our pleadings, but you're correct, we didn't file a
19 specific motion under the rule asking for the disclosure
20 of grand jury materials to the court. Specifically,
21 that would be something like the presentment of the
22 Indictment, what the United States Attorney's Office
23 said by way of instruction to the grand jury, by way of
24 summation of evidence to the grand jury, perhaps -- it's
25 been my experience that in most of these instances the

1  record that establishes, or that purports to establish
2  probable cause before the grand jury usually is a
3  government agent testifying.  So none of that -- we
4  haven't filed a motion specifically to that point, Your
5  Honor.  There's a second -- and so I think that's what
6  you're asking.  And I suppose since we requested you to
7  review those documents, under Rule 6(e) -- I forget
8  exactly the chain because it goes down quite a bit -- I
9  think that we -- we're happy to file a brief motion
10 moving that the court order the disclosure of those
11 pursuant to I think it's 6(e), whatever the number is,
12 and then capital (E) little (i).
13            THE COURT:  Right.  Capital (E) small (i).
14            MR. WASHBURN:  That was my recollection,
15 Your Honor.  So I suppose we ought to move their -- we
16 had some discussion of whether -- I think in our
17 position on the sealing of Mr. Hirata's declaration we
18 had some discussion of whether that constituted a
19 motion.  It sounds like the court would probably rather
20 we just have a direct motion --
21            THE COURT:  Let me ask Mr. Bennett.  Does
22 the United States intend to oppose such a motion?
23            MR. BENNETT:  No.  If -- I think -- the
24 statute standard is good cause.  And in this case I
25 think there is good cause for the court to order and for

8

1    the United States to produce the matters occurring
2    before the grand jury.  To that effect, Your Honor,
3    since I wasn't a prosecutor in this case, I'm taking
4    this as sort of a civil matter, I was wondering if the
5    court would grant an oral motion to allow me to review
6    the 6(e) -- the matters occurring before the grand jury
7    so that I --
8              THE COURT:  Yes, absolutely.  I believe
9    that's appropriate.
10             Why don't we see if we can shortcut this.  I
11   don't need any more paper, unless you'd just like to
12   chop down another tree.  But I'm going to treat
13   Mr. Washburn's statement as an appropriate motion under
14   Rule 6(e) to release the grand jury proceedings to the
15   court, not to the public, and take the United States'
16   position as not opposing that motion, and we will enter
17   an order to that effect.  And Mr. Bennett, of course,
18   will be allowed to review those.  And subject to that
19   review, if there's some part of that that you believe
20   should not be released to the court you can raise an
21   objection at that point.  And I think I will need all of
22   the grand jury -- there were several grand jury
23   proceedings in this case.  I think I will need the
24   transcripts for each one of the grand jury proceedings.
25             So with those ideas in mind, what's the

1  schedule you're proposing?
2              MR. BENNETT:  Mr. Washburn and I, as he
3  mentioned, have had a few discussions on this.  What
4  we've initially proposed is that the United States'
5  response memorandum would be due on January 31st as to
6  the substantive issues in the motion.
7              There was something I think that
8  Mr. Washburn alluded to just a moment ago regarding
9  any -- to see whether Mr. Hirata's declaration should be
10 sealed.  And we had discussed the date of December 29th
11 for the United States to respond to whether that should
12 remain under seal or whether it matters at all.  But
13 having just received this, this is something that we're
14 just trying to initially go through.  And I believe that
15 we had agreed that on February 28th, at least
16 preliminarily, would be the due date for the reply
17 memorandum from Mr. Diehl.  Now, that may be -- if
18 there's something along those lines that we find that
19 they need more time, I would absolutely be willing to
20 grant Mr. Washburn extra time.  I think --
21             THE COURT:  What would be a reasonable date
22 to set for production of the grand jury transcripts?
23             MR. BENNETT:  Those are -- I think we have
24 those ready to go, and so I think a week from today
25 would probably be ample.  If I'm wrong, I will let the

1  court know, but I'm fairly certain we should be able to
2  produce them by then.
3           THE COURT:  Say the 20th of December.
4           MR. WASHBURN:  And, Your Honor, just a point
5  of clarification because you ordered that the grand jury
6  transcripts would be produced to the court and not the
7  public, I assumed, although -- I assume that's not to
8  me.
9           THE COURT:  No.  They need to go to you as
10 well.
11          MR. WASHBURN:  Okay.  Thank you.
12          THE COURT:  Yes.
13          MR. BENNETT:  Okay.  My understanding was
14 that the only thing was allowed is to go to the court
15 and not to counsel because these are ex parte.  That's
16 what the statute says, ex parte to the court.  I have
17 yet to see -- maybe there is out there, but none of the
18 cases I've read would allow those to go to counsel yet.
19 It's always been in camera review ex parte for the
20 court.
21          MR. WASHBURN:  I think, Your Honor -- I
22 think what Mr. Bennett is referencing there -- and there
23 are two different statutory regimes that we could
24 potentially be working under.  One is under EAJA.  And
25 if you look at the discovery provision under EAJA, it

1   does talk about production of classified materials and
2   other things, including matters occurring before the
3   grand jury, and directs that those matters would be
4   presented and kept in camera and kept under seal.  Now,
5   I haven't looked at -- frankly, the Hyde Amendment
6   cases, Your Honor, are so few and far between that
7   there's not a very well developed juris prudence.
8           A second statutory regime, since we are
9   talking about matters occurring before the grand jury,
10  Rule 6(e) itself provides a mechanism upon the request
11  of the defendant, which I think we just had here, for
12  the court to order the disclosure of any grand jury
13  materials that are -- and I'm going to lose the exact
14  phrase from the statute, Your Honor, but something like
15  preliminary to or in association with litigation.  And
16  under Rule 6(e) you see a number of cases where, for
17  example, the court gets a request from a private
18  litigant to have something disclosed in the context of
19  say an IRS audit, or something along those lines, and
20  the court considers that and discloses those materials
21  to the defendant under Rule 6(e).  So I think Rule 6(e)
22  has a mechanism where the court could order it
23  disclosed.
24          Although, I agree with Mr. Bennett that if
25  he's just talking about the Hyde Amendment, there is

1    this discussion of -- and it's 3006(a), I believe.  But
2    so I think the court could order it, could order the
3    disclosure of matters occurring before the grand jury
4    and that those be produced to us.  I think if we were
5    dealing with one of the other categories under the Hyde
6    Amendment, such as classified materials or the like,
7    then I don't think the court would have the ability
8    because there wouldn't be a separate statutory or
9    rule-based regime for the court to rely on in ordering
10   the disclosure.
11             THE COURT:  I think the question is whether
12   or not they should be disclosed to the public is one we
13   don't have to resolve at this point.  There may come a
14   time in which the court concludes, or the parties
15   conclude that the grand jury materials should be
16   disclosed to the public, but we're not at that stage
17   yet.  But I do believe that in order for Mr. Diehl to be
18   able to argue the basis for his Hyde Amendment motion,
19   Mr. Washburn needs to see what was presented to the
20   grand jury because part of the basis of his argument is
21   that there was misrepresentations to the grand jury, or
22   failure to disclose relevant information to the grand
23   jury.  I don't know how he can make that argument to the
24   court without seeing what was said to the grand jury.
25             MR. BENNETT:  May I make a proffer on that?

1                    THE COURT:  Sure.
2                    MR. BENNETT:  This isn't atypical.  We run
3    into this situation, for example, in freedom of
4    information act cases.  What we do there is produce a
5    Vaughn Index where the court can have in camera review
6    of the things the United States has billed and the
7    opposing party to the FOIA motion is able to say, well,
8    based on this, we don't think these exemptions apply
9    because of this reason.  We would produce an index as
10   opposed to actually producing the material because the
11   way -- at least what I've seen in the Hyde Amendment is
12   that because it specifically applies in this situation,
13   my understanding is what it says is it's only ex parte
14   in camera review for the court, not for disclosure to
15   the parties even.  I think *Gardner*, the case out of the
16   Western District of Oklahoma, was then Judge Holmes,
17   talks about that standard fairly thoroughly.
18                   But that's why I think at this point in time
19   what I would propose is we can produce some sort of a
20   privilege index or something to that effect that would
21   at least provide notice to Mr. Washburn to be able to
22   make an argument without disclosing the material under
23   6(e).  I think it harmonizes the statute better.
24                   THE COURT:  Let's proceed in this manner:
25   Let's have the United States produce the transcripts to

 1   the court on December 20th.  Produce the appropriate
 2   index that you've described with a list of privileged
 3   material.  Mr. Washburn at that point can move the court
 4   for disclosure to himself and the United States can
 5   determine if they're going to oppose that.  Does that
 6   make sense?
 7              MR. BENNETT:  Yes, Your Honor.
 8              MR. WASHBURN:  It does, Your Honor.  And
 9   perhaps that time of year's going to be a little bit
10   odd, but we had -- we had discussed and I think
11   Mr. Bennett had mentioned that he was contemplating a
12   deadline for them to oppose the disclosure on
13   Mr. Hirata's declaration on the 29th.  Perhaps we
14   should -- just to get deadlines out there -- give
15   ourselves a deadline of -- give me a deadline of the
16   29th to move for disclosure under the grand jury so
17   we're moving this process along.  Does that make sense?
18              THE COURT:  I agree with that.  I mean I
19   don't -- we obviously don't want to delay this
20   litigation longer than necessary, but there's not --
21   it's not critical that we do this on such a schedule
22   that both sides don't a have full opportunity to fairly
23   argue their positions, and so we should set the schedule
24   with that in mind.  So if that schedule works for you,
25   Mr. Washburn, let's make that the schedule.

```
 1                    MR. WASHBURN:  It does, Your Honor.
 2                    Your Honor, I would also note one other
 3   issue, and I apologize if the court had something
 4   that --
 5                    THE COURT:  No.
 6                    MR. WASHBURN:  One other issue that comes up
 7   is there is one specific instance of a matter occurring
 8   before the grand jury material that the court had raised
 9   in its order of November 16th, whether it ought to be
10   made part of the public record, and that -- I assume
11   that Mr. Bennett will be talking about this on the
12   December 29th, but I just wanted to flag that the
13   declaration at issue goes in pretty great detail --
14   well, not in great detail, but into some detail, and our
15   response to it goes into rather more detail into some
16   matters occurring before the grant jury there.  So that
17   will probably be a different cutout of matters occurring
18   before the grand jury, specifically the testimony of the
19   accountant than the rest of this that we're
20   contemplating right now.
21                    MR. BENNETT:  That's a good point,
22   Mr. Washburn, because some of those matters that
23   occurred before the grand jury had been disclosed
24   pursuant to the Jencks Act.  So what we're talking about
25   is those that haven't been disclosed yet because there
```

```
 1   wasn't a Jencks Act obligation to disclose those.
 2              THE COURT:  All right.  So does that take
 3   care of the issues we need to address before we move
 4   forward?
 5              MR. WASHBURN:  I think so.  I just want to
 6   make sure I understood.  Mr. Bennett -- so the 29th
 7   would be his response as to Mr. Hirata's declaration,
 8   would be our response to -- you know, requesting the
 9   disclosure to us of materials -- of grand jury materials
10   produced.  And then I didn't get down in my notes, so I
11   apologize, the date when they plan to file their
12   substantive response on the Hyde Amendment.
13              THE COURT:  I think January 31st.
14              MR. BENNETT:  Correct.
15              MR. WASHBURN:  Perfect.
16              THE COURT:  Your response would be due the
17   end of February, February 28th.  Do you have all of
18   those dates, Tracy?
19              THE CLERK:  I do.
20              THE COURT:  Okay.
21              Anything else we should discuss today before
22   we recess?
23              MR. WASHBURN:  Just briefly, Your Honor, our
24   schedule doesn't contemplate it, and I know the United
25   States will probably take a position related to this,
```

```
 1   but I suppose what we do then is figure out whether we
 2   need any sort of evidentiary hearing or any sort of
 3   discovery after that round of briefing.  I think that's
 4   what Mr. Bennett had suggested because --
 5               THE COURT:  My view is that once we get the
 6   briefing, we'll have a discussion about whether we --
 7   how we set the hearings and whether we have an
 8   evidentiary hearing.  It may well be with the
 9   declarations and the supporting materials everything's
10   before the court.  If it's not, one or the other side
11   wants to present materials, we'll consider it at that
12   point.
13               MR. WASHBURN:  Perfect.
14               THE COURT:  I mean if that satisfies the
15   parties, so I think that's how we should proceed.
16               MR. WASHBURN:  It does.  Thank you, Your
17   Honor.  And nothing else from Mr. Diehl.
18               MR. BENNETT:  Nor from the United States.
19               THE COURT:  We will be in recess.
20               (Whereupon, the matter was concluded.)
21                            *   *   *
22
23
24
25
```

C E R T I F I C A T E

State of Utah

County of Salt Lake


    I, Karen Murakami, a Certified Shorthand Reporter for the State of Utah, do hereby certify that the foregoing transcript of proceedings was taken before me at the time and place set forth herein and was taken down by me in shorthand and thereafter transcribed into typewriting under my direction and supervision;

    That the foregoing pages contain a true and correct transcription of my said shorthand notes so taken.

    IN WITNESS WHEREOF, I have hereunto set my hand this  28th day of December, 2017.


                                          _Karen Murakami_
                                          Karen Murakami, CSR, RPR